IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:22-cv-00026-MOC-WCM

| ANGELA MCCRAW, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM AND |
| v. | ) | RECOMMENDATION |
| | ) | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | ) ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the Court on the parties' cross Motions for Summary Judgment (Docs. 9, 12), which have been referred to the undersigned pursuant to 28 U.S.C. § 636 for the entry of a recommendation.

I. Procedural Background

On June 7, 2013, Plaintiff Angela McCraw ("Plaintiff") filed an application for disability insurance benefits. Transcript of the Administrative Record ("AR") 214-217. Plaintiff alleged disability beginning on October 10, 2012.

Following an administrative hearing at which Plaintiff appeared and testified, Plaintiff's claim was denied by an Administrative Law Judge ("ALJ") in an opinion issued on October 15, 2015. AR 36-56. Following an appeal, the District Court remanded the matter for further administrative proceedings,

1

and on July 2, 2018, the Appeals Council vacated the October 15 Decision. AR 1143-1154; AR 1134-1138.[1]

On November 13, 2019, following another administrative hearing, the same ALJ again denied Plaintiff's claim. AR 1185-1213. Plaintiff filed written exceptions to the November 13 decision, and on April 27, 2021, the Appeals Council remanded the case. AR 1216-1219.

On December 15, 2021, following a third administrative hearing, a different ALJ issued an unfavorable decision. AR 1050-1089. The December 15 decision is the Commissioner's final decision for purposes of this action.

## II. The ALJ's Decision

The ALJ found that Plaintiff had the severe impairments of "hearing loss in the left ear post tympanomastoidectomy and mastoid sarcoma, chronic mastoiditis; degenerative disc disease of the cervical and lumbar spine; morbid obesity; migraine headaches; left shoulder arthritis, bipolar disorder, schizoaffective disorder, and anxiety." AR 1056. After determining that Plaintiff's impairments did not meet or medically equal one of the listed impairments, the ALJ found that, through the last date on which she was insured (December 31, 2017), Plaintiff had the residual functional capacity ("RFC"):

---

[1] See McCraw v. Berryhill, No. 1:16-cv-00402-MR, United States District Court, Western District of North Carolina.

> to perform light work…except she was limited to frequent climbing of ramps and stairs, balancing, stooping, and crouching; no climbing of ladders, ropes, or scaffolds; frequent reaching overhead with the dominant left upper extremity; no exposure to hazards such as unprotected heights and large moving machinery; was able to work in a moderate noise environment as defined by the SCO; was able to maintain attention and concentration for two-hour periods throughout the eight-hour workday while performing simple, repetitive tasks; was able to work in a setting that does not require strict production quotas or a consistent fast pace; no high speed conveyor belt/assembly line work; was limited to frequent interact [sic] with supervisors, coworkers, and occasionally the public, but not able to provide direct customer service; and was able to adapt to occasional changes in the work routine and tasks.

AR 1060.

Applying this RFC, the ALJ found that during the relevant period (October 10, 2012 through December 31, 2017), Plaintiff had the ability to perform certain jobs that existed in significant numbers in the national economy such that Plaintiff was not disabled. AR 1075.

### III. Plaintiff's Allegations of Error

Plaintiff argues that the ALJ failed to consider appropriately certain opinion evidence when developing the RFC, failed to resolve an apparent conflict between the RFC and the representative jobs relied upon by the ALJ in determining that Plaintiff could work, and erred when determining that a significant number of the representative jobs existed in the national economy.

## IV. Standard of Review

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505; 416.905. The regulations require the Commissioner to evaluate each claim for benefits using a five-step sequential analysis. 20 C.F.R. §§ 404.1520; 416.920. The burden rests on the claimant through the first four steps to prove disability. Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If the claimant is successful at these steps, then the burden shifts to the Commissioner to prove at step five that the claimant can perform other work. Mascio v. Colvin, 780 F.3d 632, 635 (4th Cir. 2015); Monroe, 826 F.3d at 180.

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and whether the Commissioner's final decision applies the proper legal standards. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). When a federal district court reviews the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). Accordingly, the issue before the court is not whether Plaintiff

is disabled but, rather, whether the Commissioner's decision that she is not disabled is supported by substantial evidence in the record and based on the correct application of the law. Id.

V. Discussion

A. Consideration of Opinion Evidence

When evaluating and weighing medical opinions, an ALJ should consider multiple factors, including (1) the examining relationship, (2) the treatment relationship, including the length of the relationship and the frequency of examination and the nature and extent of the relationship; (3) supportability; (4) consistency; (5) specialization; and (6) any other relevant factors. 20 C.F.R. §§ 404.1527(c)(1)–(6). The regulations require "ALJs to consider *all* of the enumerated factors in deciding what weight to give to a medical opinion." Arakas v. Comm'r, Soc. Sec. Admin., 983 F.3d 83, 107 n.16 (4th Cir. 2020) (citing 20 C.F.R. § 404.1527(c)) (emphasis in original).

Here, Plaintiff contends that the ALJ improperly discounted the opinions of Dr. Lauren Frey, Arthur Hamlin, Psy.D., and David Mullen, Ph.D.

1. Dr. Lauren Frey

Dr. Frey, a neurologist, reviewed Plaintiff's medical records and testified during the third administrative hearing. AR 1098-1107. Dr. Frey stated that, during the relevant period, Plaintiff would have had difficulty focusing and concentrating and would have needed to "work in a low-noise, low-light

5

environment" when she had a headache. AR 1101. Additionally, Dr. Frey testified that the frequency of Plaintiff's headaches was "unclear," characterized the frequency of her headaches "as some or frequent or less," and noted that Plaintiff's symptoms were "quite vague." AR 1101; 1106. Dr. Frey also stated that Plaintiff was prescribed medication and treated with nerve blocks for her migraines but that medical records after December 2017 indicated Plaintiff's migraine condition was well controlled without medication. See AR 1102; 1103. Finally, Dr. Frey explained that "abnormal neurological findings" would not be expected with migraine headaches. AR 1106-1107.

It appears that most of the limitations identified by Dr. Frey were included in the RFC. However, the ALJ gave "partial weight" to Dr. Frey's testimony and stated that the "longitudinal evidence" did not support a limitation that Plaintiff work in a "low-light environment," and that the record reflected "fairly good control of her headaches with medication and treatment, little treatment with a specialist in some time, and the ability to concentrate sufficiently to obtain a GED during the time period at issue." AR 1072.[2]

---

[2] Plaintiff apparently testified about obtaining her GED during an April 3, 2019 hearing. See AR 1185-1213 (November 13, 2019 decision). A transcript of that hearing, though, does not appear in the current administrative record.

6

Plaintiff argues that the ALJ erred in failing to include a limitation to working in a low-light environment because the medical evidence includes numerous records reflecting Plaintiff's sensitivity to light. See Doc. 10 at 9-10 (citing AR 436, 443, 1003, 1633, 335, 413, 411, 981, 995). Plaintiff also asserts that the ALJ failed to consider Plaintiff's ability to concentrate and focus while having a headache.

In her decision, however, the ALJ acknowledged that Plaintiff's symptoms included photophobia, AR 1063 (citing AR 432-433 (October 2012 neurologist record indicating that Plaintiff was seen in a "dark room, wearing sunglasses with severe headache")), and cited records indicating that Plaintiff reported photophobia, although the ALJ did not discuss specifically the portions of those records that reflected Plaintiff's sensitivity to light. See AR 1063 (citing AR 443 (August 2013 neurology note indicating Plaintiff reported sensitivity to light); AR 405 (March 2013 treatment note reflecting that Plaintiff presented with dark glasses on and reported that her headache was triggered when she went to church and heard loud music); AR 1003 (August 2015 record indicating Plaintiff was positive for photosensitivity); AR 1633 (March 2017 emergency room record reflecting that Plaintiff presented with complaints of "bugs in her head," endorsed dull, throbbing headaches described as a 'vise grip,' and reported that she had a "history of migraines up until 3

7

weeks ago when she used at her left ear a daith and she has had no migraine since," and that her migraines typically involved photo and phonophobia)).

Further, the ALJ explained that Plaintiff had been prescribed Maxalt for her migraines and reported in August 2013 that this medication helped, and that Plaintiff testified that when Maxalt worked, a migraine would last fifteen to twenty minutes. AR 1063 (citing AR 443; AR 76-77). Additionally, the ALJ explained that Plaintiff had not treated with a neurologist and had not taken Maxalt for migraine headaches since 2015, and that Plaintiff testified during her most recent hearing that although she did not have insurance to pay for Maxalt during a portion of the relevant period, when she did obtain insurance coverage again, she no longer needed that medication. AR 1063 (citing AR 1003 (August 2015 neurologist treatment note)); see also AR 1117 (Plaintiff's testimony that she did not go back to the neurologist after being approved for Medicaid because "they wasn't that severe and plus the neurologist that I seen had moved").

The ALJ also noted that Plaintiff had not required frequent emergency room treatment for migraine headaches, had not reported "substantial symptoms" to her treating providers after 2015, and had reported that her migraines had resolved with daith piercing in 2017. AR 1063 (citing AR 1633)).

Finally, the ALJ explained that Dr. Frey had testified that Plaintiff's headache symptoms were "quite vague," that they appeared to be fairly well

controlled, and that Plaintiff had been able to obtain a GED during the relevant period despite her complaints of headache. AR 1063; AR 1072.

"[T]he substantial evidence standard 'presupposes…a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" Dunn v. Colvin, 607 Fed. Appx. 264, 274 (4th Cir. 2015) (quoting Clarke v. Bowen, 843 F.2d 271, 272-273 (8th Cir. 1988)). At the same time, "[a]n ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." Lewis v. Berryhill, 858 F.3d 858, 869 (4th Cir. 2017) (remand appropriate because the same medical records that contained the "normal" findings relied upon by the ALJ also included notations that plaintiff presented with constant pain and was given a steroid injection); see also Arakas v. Commissioner, Social Security Administration, 983 F.3d 83, 99 (4th Cir. 2020) (vacating ALJ's decision where ALJ cherrypicked certain facts and misstated and mischaracterized other material facts). In sum, when weighing the evidence, the ALJ cannot ignore material evidence that is contrary to his or her decision.

Here, although the ALJ acknowledged Dr. Frey's opinion that Plaintiff would be sensitive to light and have difficulty concentrating when Plaintiff had

a headache, the ALJ based the limitations in the RFC on other portions of the record which she found to be persuasive and which indicated that Plaintiff's headaches were fairly well controlled, that Plaintiff had little treatment with a neurologist, and that Plaintiff was able to obtain a GED during the relevant period. As there is substantial evidence to support the ALJ's conclusions, the undersigned will not recommend remand on this basis.

### 2. State Agency Consultants

Plaintiff also contends that the ALJ erred in her consideration of the opinions of two state agency psychological consultants. Plaintiff argues that, based on these opinions, the ALJ should have included more significant social limitations and should have found that Plaintiff was limited to understanding and remembering very short and simple instructions.

The ALJ gave "partial" weight to the opinions of Drs. Hamlin and Mullen, and stated that these consultants:

> essentially opined the claimant was able to perform simple, routine, repetitive tasks, can interact with others with limitations in interaction with the public, and can respond appropriately to changes in routine. Their opinions are somewhat consistent with Dr. McNulty's opinion that the claimant could perform simple, routine, repetitive tasks. Their opinions are consistent with the record as a whole that claimant exhibits anxiety symptoms and some increased symptoms of paranoia and hallucinations when not taking medication. However, when resuming treatment and medication, these symptoms are much better controlled such that she has fairly normal

> mental status. Their opinions are also consistent with the fact that she was able to obtain a GED during the time period at issue.

AR 1070.

### a. Dr. David Mullen

In a mental residual functional capacity evaluation completed on May 4, 2017, Dr. Mullen determined that Plaintiff could tolerate coworkers and supervisors "in a non public setting in which interactions are brief, superficial and task-oriented" and could have only "incidental" contact with the general public. AR 1259. As noted, the ALJ gave partial weight to the opinion of Dr. Mullen.

It appears that Plaintiff's limitation in the RFC to occasional interaction with the public, with no direct customer service, is consistent with Dr. Mullen's opinion that Plaintiff could have only incidental interaction with the public.

However, Dr. Mullen also found that Plaintiff could interact with supervisors and co-workers only when such interactions were "brief, superficial and task-oriented." The RFC limited Plaintiff to "frequent" interactions with supervisors and coworkers, but the ALJ did not explain how this limitation was consistent with Dr. Mullen's opinion or, alternatively, why further limitation in the RFC was unnecessary.

Accordingly, the undersigned will recommend remand on this basis. Cf., Vantuyl v. Colvin, 985 F. Supp. 2d 880, 892 (N.D. Iowa 2013) (finding that the

ALJ accounted for moderate limitations in the ability to accept instructions and respond appropriately to criticism from supervisors by limiting claimant to no more than brief, superficial (not intense, frequent, or constant) social interaction with coworkers, supervisors, or the general public)).

### b. Dr. Arthur Hamlin

In a mental residual functional capacity evaluation completed on August 6, 2013, Dr. Hamlin determined that Plaintiff had the "ability to understand and remember very short and simple instructions." AR 133. It is not immediately apparent, though, how the ALJ considered this opinion, as the ALJ did not include a limitation regarding Plaintiff's ability to remember and understand instructions in the RFC and did not otherwise discuss this particular portion of Dr. Hamlin's opinion.

Significantly, had the ALJ included a limitation to short, simple instructions, there would have been an apparent conflict between Plaintiff's abilities and the jobs relied upon by the ALJ to determine Plaintiff was not disabled. AR 1074 (identifying the jobs of "marker," "router," and "photocopy machine operator"); see also DICOT 209.587-034 (G.P.O.), 1991 WL 671802 ("marker"); DICOT 222.587-038 (G.P.O.), 1991 WL 672123 ("router"); DICOT 207.685-014 (G.P.O.), 1991 WL 671745 ("photocopying-machine operator") (each requiring the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems

12

involving a few concrete variables in or from standardized situations")); Thomas v. Berryhill, 916 F.3d 307, 314 (4th Cir. 2019) (a claimant who can "follow short, simple instructions" cannot perform occupations requiring the ability to "carry out detailed but uninvolved written or oral instructions...."). Johnson v. Saul, No. 5:18-CV-00152-FDW, 2020 WL 1429244, at *5 (W.D.N.C. Mar. 19, 2020) (finding an apparent conflict between the RFC requirement of "short, simple instructions" and the Reasoning Level 2 requirement of "detailed but uninvolved instructions" required for jobs identified by vocational expert).

The undersigned will also recommend remand on this basis.

### B. Plaintiff's Remaining Arguments

Plaintiff also argues that the ALJ failed to resolve an apparent conflict between the reaching requirements of the jobs relied upon by the ALJ and failed to determine how many jobs identified by the VE were for full-time work.

During the hearing, the VE identified the jobs of "router," "marker," and "photocopy machine operator" as examples of work that would be available to a claimant with Plaintiff's RFC. AR 1126-1132. As noted above, the ALJ relied on these jobs in finding that Plaintiff was not disabled. AR 1074. These representative jobs, as described in the Dictionary of Occupational Titles and its companion publications (collectively, the "Dictionary"), require the ability to reach "frequently;" the direction of the reaching is not specified. DICOT

209.587-034 (G.P.O.), 1991 WL 671802; DICOT 222.587-038 (G.P.O.), 1991 WL 672123; DICOT 207.685-014 (G.P.O.), 1991 WL 671745.

Plaintiff argues that the ALJ failed to resolve an apparent conflict between jobs requiring frequent reaching and the RFC, which limited Plaintiff to "frequent reaching overhead with the dominant left upper extremity," see AR 1060; Doc. 10 at 18-19, and the Commissioner concedes that there is an apparent conflict between the jobs identified and the RFC's limitation to frequent overhead reaching with the left upper extremity. See Doc. 13 at 19.

The undersigned, however, is not convinced that such a conflict exists. That is, the RFC indicated that Plaintiff had the ability to reach overhead frequently with her left arm and that her ability to reach overhead with her right arm was not limited. The jobs identified by the ALJ, though, did not require any more than "frequent" reaching with either arm. Cf. Pearson v. Colvin, 810 F.3d 204, 210-211 (4th Cir. 2015) (finding an apparent conflict existed where claimant could "occasionally" reach upward with his non-dominant arm, and the occupations relied upon by the ALJ required "frequent" reaching).

Finally, Plaintiff argues that the ALJ erred in her determination that there were a significant number of jobs Plaintiff could perform because the VE's testimony regarding the availability of the representational jobs was

based on software that defined full-time work as 35 hours per week rather than 40 hours per week. Doc. 10 at 19-21.

However, Plaintiff cites no authority for this position. See Missy v. Saul, No. 4:20-CV-701-ERW, 2021 WL 2665918, at *6 (E.D. Mo. June 29, 2021) (rejecting argument that VE's testimony was improperly based on census data that defined full-time work as 35, rather than 40, hours per week) (citing Dipple v. Astrue, 601 F.3d 833, 836 (8th Cir. 2010) ("The vocational expert was neither required to articulate the percentage of available jobs that were part-time or full-time, nor to describe labor market conditions beyond the data that were readily available")).

Accordingly, the undersigned will not recommend remand on these grounds.

## VI. Recommendation

The undersigned respectfully **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Doc. 9) be **GRANTED**, and that the Commissioner's Motion for Summary Judgment (Doc. 12) be **DENIED.**

Signed: February 2, 2023

*[signature]*

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).